ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
                                              )
Capy Machine Shop, Inc.                       )       ASBCA No. 59085
                                              )
Under Contract No. SPE4A6-13-M-S227           )

APPEARANCE FOR THE APPELLANT:          Mr. Salvatore Capacchione
                                        President

APPEARANCES FOR THE GOVERNMENT:        Daniel K. Poling, Esq.
                                        DLA Chief Trial Attorney
                                        Edward R. Murray, Esq.
                                        Adrienne D. Bolton, Esq.
                                        Trial Attorneys
                                        DLA Aviation
                                        Richmond, VA

OPINION BY ADMINISTRATIVE JUDGE TUNKS

This is an appeal from the default termination of a contract to supply aircraft fairings. The parties have elected to submit the appeal on the record pursuant to Board Rule 11.

FINDINGS OF FACT

1. On 25 September 2013, Mr. John Vlachos, general manager of Capy Machine Shop, Inc. (Capy), accepted Order No. SPE4A6-13-M-S227[1] (hereinafter the contract) in the amount of $37,431.60. The contract required Capy to supply 18 aircraft fairings[2] to the Defense Logistics Agency Aviation (DLA Aviation or government). (R4, tab 1 at 1, 5) The delivery date for the first article was 24 April 2014 and the remaining 17 units were due on 18 February 2015 (R4, tab 2 at 2).

2. The contract incorporated FAR 52.249-8, DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984), which provided, in part, as follows:

---

[1] The contract resulted from a Request for Quotations issued by the government on 16 August 2013 (R4, tabs 3, 4).

[2] Statement of Facts ¶ 1 of our decision on the government's motion for summary judgment (*Capy Machine Shop, Inc.*, ASBCA No. 59085, 14-1 BCA ¶ 35,783), erroneously stated that the contract was for 27 splice fairings. The contract was for 18 fairings, one of which was a first article. (R4, tab 1)

(a)(1) The Government may...terminate this contract in whole or in part if the Contractor fails to—

(i) Deliver the supplies or to perform the services within the time specified in this contract or any extension;

(ii) Makes progress, so as to endanger performance of this contract...; or

(iii) Perform any of the other provisions of this contract....

(R4, tab 1 at 23)

3. On 18 October 2013, Banner Metalcraft, Inc., Capy's subcontractor, revised its quote to Capy adding a one-time tooling charge of $19,647 to its quotation (app. 12 March 2015 br., attachs. 1, 4).

4. On 7 November 2013, Mr. Vlachos requested a no-cost cancellation of the contract, stating as follows:

Please cancel the above contract at no cost to Capy Machine.

Our forming vendor can't locate his tooling[.]

(R4, tab 6)

5. The contracting officer issued the following show cause notice to Capy on 13 November 2013:

Because you have indicated in an e-mail dated 07 NOV 2013 citing an inability to locate tooling on contract SPE4A6-13-M-S227 within the time required by its terms and thereby requesting termination for convenience, the Government is considering terminating this contract under the provisions for default. Pending a final decision in this matter, it will be necessary to determine whether your failure to perform arose from causes beyond your control and without your fault or negligence. Accordingly, you are given the opportunity to present, in writing, any facts bearing on the question to me...within 10 days after receipt of this notice....

....

2

If you have any questions, please contact
Len DuPilka, Contract Administrator....

(R4, tab 7)

6. On 26 November 2013, Mr. Vlachos responded to the show cause notice as follows:

> The cost of new tooling is $19,647.00 total which wasn't
> included on the quote.
> That is the reason for asking to cancel this contract.

(R4, tab 8)

7. On 12 December 2013, Capy's contract was terminated for default pursuant to FAR 52.249-8:

> You are hereby notified that contract SPE4A6-13-M-S227
> is terminated for default effective immediately. Your right
> to proceed further with performance of this contract is
> terminated. The termination is based on your failure to
> perform in accordance with the terms and conditions of the
> contract. The terminated supplies may be procured against
> your account and you will be held liable for excess costs.

(R4, tabs 9-10) How Capy had failed to perform was not explained.

8. On 19 December 2013, Capy timely appealed the termination of its contract to this Board, where it was docketed as ASBCA No. 59085.

9. The government moved for summary judgment on the ground of anticipatory repudiation on 4 April 2014. We denied the motion on 022 October 2014. *Capy Machine Shop*, 14-1 BCA ¶ 35,783.

10. The parties have agreed to submit the appeal on the written record pursuant to Rule 11. Both parties submitted briefs. The government attached Mr. DuPilka's 5 March 2015 declaration to its brief as exhibit 3. His declaration states, in part, as follows:

> Capy has a history of obtaining awards by quoting low
> prices, then requesting cancellation when they cannot
> perform the contract at that price. I have included as
> Exhibit 1 e-mails from Capy, all received after
> September 24, 2013, requesting cancellation after award on

3

13 orders in addition to the two contracts identified above....

When we cancel a contract, it has an adverse impact on DLA Aviation. A buyer and Contracting Officer must start the process all over again, by issuing a new solicitation, obtaining quotes, and making a new award. This takes time. Not only does it increase DLA Aviation's administrative costs, it also means we will take longer to get the parts to our military customers. In many instances it also leads to them going without the parts they need.

The government also submitted answers to interrogatories propounded to Capy, in part, as follows:

Interrogatory 4: In your January 9, 2014, Complaint you state "[We] cannot afford to complete this order." Explain what you meant by "cannot afford to complete this order."

Answer: The cost of tooling exceeded the price of the contract therefore making the contract unconscionable.

Interrogatory 5: Identify the date when you decided you could not afford to complete the order.

Answer: On 11/07/13.

....

Interrogatory 7: At the time the contract was terminated for default, did you intend to fulfill the contract at the existing contract price?

Answer: Due to the circumstance we were unable to fulfill the contract.

4

## DECISION

A termination for default is "a drastic sanction which should be imposed...only for good grounds and on solid evidence." *J.D. Hedin Construction Co. v. United States,* 408 F.2d 424, 431 (Ct. Cl. 1969) (citations omitted). The government bears the burden of proving that the termination was justified. If the government establishes a *prima facie* case that the termination was proper, the burden of production—or going forward—shifts to the contractor. *Lisbon Contractors, Inc. v. United States,* 828 F.2d 759, 765 (Fed. Cir. 1987).

The government argues that its termination for default was justified because (1) Capy anticipatorily repudiated the contract; and (2) Capy's routine practice of bidding low and requesting no-cost cancellations when it cannot perform adversely impacts DLA's ability to supply needed parts to the field and increases its administrative costs. Capy argues that the termination was improper because its supplier increased the cost of tooling after award, making it unconscionable for Capy to perform at the contract price.

The government argues that Capy anticipatorily repudiated the contract because it requested the CO to cancel the contract after award. We considered and rejected this argument in our decision on the government's motion for summary judgment. *Capy Machine Shop,* 14-1 BCA ¶ 35,783 at 175,042. We held that Capy's request did not evince the "positive, definite, unconditional and unequivocal" refusal to perform required to prove anticipatory anticipation. While the government has submitted additional evidence, including Capy's answers to interrogatories, we are not convinced that such responses render its request for a no-cost termination to be a positive, definite, unconditional and unequivocal refusal to perform. Capy made a request to which the government never really responded, except to terminate for default.

The government also argues that the termination should be upheld on the basis of public policy. In its brief, the government explains as follows:

> Capy routinely asks the Government to cancel its contracts after award because it can no longer afford to perform them or cannot obtain the part it originally quoted.... [T]his...negatively impacts DLA Aviation.... DLA Aviation must essentially start over from scratch and issue a new solicitation for the item, review quotes, and make a new award, then wait for a new delivery period to pass.... Certainly the Government could wait until delivery was due for each of Capy's contracts [and] then terminate for default...[b]ut that would put the Government even further behind in obtaining the parts it needs and hamper its ability to effectively prioritize its procurement workload.

(Gov't br. at 8-9)

5

The government has not pointed to any authority justifying a termination for default under one contract based upon performance under other contracts. Nor are we aware of any. This argument is unpersuasive.

Federal Rules of Evidence (FRE) 406[3] permits the introduction of evidence of routine practices of an organization to prove that on a particular occasion the organization acted in accordance with the routine practice. *See generally* Advisory Committee Notes to 1972 Proposed Rules; Handbook of Federal Evidence, 7th ed., vol. 3, § 406; Federal Rules of Evidence Manual, 8th ed., vol. 2, § 406. While perhaps the evidence of routine practice is sufficient to prove that appellant frequently requests that contracts be cancelled, it is not sufficient to prove that it is Capy's routine practice to bid or quote with no intention of performing. Indeed, the evidence in this appeal is that pre-existing tooling could not be found and would have to be produced at a cost of approximately 50% of the contract price—a fact unknown to Capy at the time of quotation or award.

The government has not pointed to any authority justifying a termination for default under one contract based upon a history of performance under other contracts. Nor are we aware of any. This argument is not persuasive. It is apparent that the government is frustrated by the number of times Capy has asked for the cancellation of contracts and considers that Capy has a routine practice of receiving awards it does not intend to fulfill. That concern is one that perhaps is best addressed in the process of the award of contracts, not the termination of contracts once awarded.

Neither of the grounds relied on by the government justify the termination for default and we have no evidence regarding whether a termination for failure to make progress was justified.

The appeal is sustained. The termination for default is converted to a termination for the convenience of the government.

Dated: 8 October 2015

ELIZABETH A. TUNKS
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

[3] The Board uses the FRE as a guide. Board Rule 10(c) (2014).

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59085, Appeal of Capy Machine Shop, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

7